NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MOHAMED MANSARAY, | : | The Hon. Joseph H. Rodriguez |
| Petitioner, | : | Civil Action No. 09-5205<br>Crim No. 07-0737 |
| v. | : | **ORDER & OPINION** |
| | : | |
| UNITED STATES OF AMERICA, | | |
| Respondent. | : | |

**RODRIGUEZ, J.**

This matter is presently before the Court on an application by Petitioner Mohamed Mansaray, who requests that the Court vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The Government now moves to dismiss Mr. Mansaray's petition. For the reasons discussed below, Petitioner's motion for habeas corpus relief will be dismissed and the Government's motion to dismiss [Doc. Entry No. 5] will be <u>granted</u>.

## I.   BACKGROUND

On August 14, 2007, Mohamed Mansaray appeared before this Court in order to enter a guilty plea through proceedings consistent with Fed. R. Crim. P. 11. Mansaray pled to a three-count Information. Count I of the Information charged Mansaray with conspiracy to illegally remit money and to structure financial transactions, in violation of 18 U.S.C. § 371. Count II of the Information charged him with illegal money

1

remission in violation of 18 U.S.C. § 1960.  Count III of the Information charged Mansaray with structuring in violation of 31 U.S.C. §§ 5324(a)(3) and (d)(2).

In exchange for the undertakings made by the government, Mansaray's plea agreement included a waiver of appeal, pursuant to which he agreed not to appeal, or to file any motion under 28 U.S.C. § 2255 (or any other form of collateral attack) if he was sentenced within or below level 26 of the United States Sentencing Guidelines.  (Plea Agreement, Schedule A at ¶ 11.)  Mansaray agreed to this provision by signing the plea agreement and also acknowledged this waiver in the Application for Permission to Enter a Guilty Plea.  (Application for Permission to Enter a Guilty Plea at ¶ 38.)  At the Rule 11 hearing, Petitioner was represented by counsel and gave sworn testimony that he understood all aspects of his plea agreement. Petitioner stated that he had reviewed the agreement with his attorney, that his attorney had answered any questions he had with regard to the Information, and that he was entering the plea agreement of his own free will. (8/14/07 Tr. at 6:1-15.)  At that colloquy the Court also specifically questioned Petitioner's understanding of his waiver of his right to appeal his sentence:

| | |
|---|---|
| The Court: | Now, at this point I usually say to a defendant: And if you think you've been improperly sentenced, you have a right to appeal. Now, this appeal question has been waived under your plea agreement to a certain extent depending on the terms of the waiver contained in your plea agreement. So if after you're sentenced you have any quarrel with the sentence, the appeal will be conditioned upon the terms and conditions of that waiver. Do you understand that? |
| The Defendant: | Yes, Your Honor. |

(Id. at 15:12-21.)

On February 5, 2009, Mr. Mansaray appeared before this Court for a sentencing hearing.  At Sentencing, the Court determined, consistent with the plea agreement, that the total offense level was 26 and that Mansaray was in criminal history category I. (2/5/09 Tr. at 5:5-6.)  This resulted in a Guidelines range of 63 to 78 months imprisonment. (Id. at 5:7.)  The Government then moved for a downward departure under U.S.S.G. § 5K1.1 due to Mr. Mansaray's cooperation.  (Id. at 5:11-7:9.)  After hearing argument from defense counsel, the Court granted a departure and sentenced Mr. Mansaray to a term of 20 months imprisonment on Counts I and II and a term of 30 months imprisonment on Count III, all to be served concurrently.   This sentence was well below the guideline range as found by the Court.

On October 13, 2009 Mansaray filed a motion pursuant to 28 U.S.C. § 2255 alleging (1) that the sentencing court plainly erred in calculating the defendant's advisory Guidelines range was 63-78 months and (2) that his attorney was ineffective for failing to review the United States Sentencing Guideline Base Offense Level calculations prior to advising Mansaray to accept the plea agreement.  The Government now seeks dismissal of Mansaray's Petition arguing that Mansaray waived his right to collaterally attack his conviction under 28 U.S.C. § 2255.  The government argues in the alternative that Mansaray's claims should be dismissed on the merits.  Mr. Mansaray failed to respond to the Government's motion to dismiss his Petition; however, the Court considers the merits of the unopposed motion.[1]  See Stackhouse v. Mazurkiewicz, 951 F.2d 29, 29 (3d Cir 1991) (applying Anchorage Associates v. Virgin Islands Board of Tax

---

[1] The Government attached a Certificate of Service with its Motion to Dismiss certifying that a copy was served on Mr. Mansaray at the proper address.

Review, 922 F.2d 168 (3d Cir.1990)).

**II.     DISCUSSION**

**A.     Standard of Review**

When considering a § 2255 petition, the Court must "accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record," and the Court "is required to hold an evidentiary hearing 'unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.'" United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005) (citations omitted). Furthermore, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000).

**B.     Waiver of Post-Conviction Relief**

Waivers of appeals are generally permissible and enforceable, "provided that they are entered into knowingly and voluntarily and their enforcement does not work a miscarriage of justice." United States v. Mabry, 536 F.3d 231, 236 (3d Cir. 2008) (citing United States v. Khattack, 273 F.3d 557, 562 (3d Cir. 2001)). The logic of Khattack and Mabry apply with equal force to the enforceability of waivers of collateral attacks on sentences, such as through habeas petitions. To determine whether a waiver is knowing and voluntary the court looks to the plea agreement and reviews the Rule 11 colloquy. United States v. Gwinnet, 483 F.3d 200, 204 (3d Cir. 2007). The role of the sentencing judge is critical to this analysis. Khattack, 273 F.3d at 563. Under Rule 11 ". . . the court must inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally

4

attack the sentence." Fed. R. Crim. P. 11(b)(1)(N)

Here, the Court engaged in a lengthy colloquy with Mr. Mansaray, in which he repeatedly testified that he understood and voluntarily accepted the entire plea agreement. Furthermore the Court specifically addressed Petitioner's waiver of his rights under § 2255, confirming that he understood that nature of the right and the fact that he was waiving that right.  This colloquy satisfies the requirements of Rule 11.  See Fed. R. Crim. P. 11   There is little question that Mansaray accepted the waiver provision knowingly and voluntarily.  Therefore, the petitioner may avoid enforcement of the provision only if he can show that such enforcement would work a miscarriage of justice.

    C.    **Miscarriage of Justice**

The Third Circuit has not specifically described when enforcement of a waiver provision would cause a miscarriage of justice.  Instead it applies a case-by-case approach adopted by the First Circuit in United States v. Teeter, 257 F.3d 14 (1st Cir. 2001).  See Khattak, 273 F.3d at 563.  Pursuant to this approach, the court is required to weigh several factors including:

> [T]he clarity of the error, its gravity, its character (e.g. whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.

Khattak, 273 F.3d at 563 (quoting Teeter, 257 F.3d at 25-26).

Here, Mr. Mansaray acknowledges that the plea agreement set forth a waiver of his right to appeal his sentence; however, he contends that the baseline line offense level applied by the Court was an inaccurate miscalculation and was "imposed in violation of the law." (Pet. Br. at 4.)  Specifically, Mansaray claims that the Guidelines offense level

5

was incorrectly calculated as 26.  Mansaray agrees that his base offense level should be 6 pursuant to U.S.S.G. § 2S1.3(a)(2), and agrees that Specific Offense Characteristic U.S.S.G. § 2S1.3(b)(2) applies, resulting in an increase of 2 levels because he committed the offense as part of a pattern of unlawful activity that involved more than $100,000 in a 12 month period.  Mansaray also agrees that Specific Offense Characteristic U.S.S.G. § 3B1.1(b) applies, resulting in an increase of 2 levels, because he was a manager or supervisor of criminal activity.  However, Mansaray disputes the application of 18 level enhancement pursuant to U.S.S.G. §§ 2S1.3(a)(2) and 2B1.1(b)(1) corresponding to the value of the illegally transmitted funds in this case, namely between $2,500,000 and $7,000,000.  Mansaray does not dispute that he illegally transmitted over 4 million dollars overseas; however, he claims that because this figure was not a "loss," 2B1.1(b)(1) does not apply.

     Mansaray explains that the criminal charges in this matter arose from his business, which was created out of a charitable desire to aid his home country, Sierra Leone.  Furthermore he explains that those individuals who donated funds for this charitable purpose did so understanding how the money would be used.  Regardless of the altruistic nature of Mansaray's motives and the manner in which he obtained funding, the relevant inquiry under the law is the value of the illegally transmitted funds.  See U.S.S.G. § 2S1.3 Application Note 1 (For purposes of this guideline, "value of the funds" means the amount of the funds involved in the structuring or reporting conduct. The relevant statutes require monetary reporting without regard to whether the funds were lawfully or unlawfully obtained).  It is the amount of the funds involved in the structuring or reporting that is significant for the purpose of sentencing.  United

States v. Thompson, 40 F.3d 48, 51-52 (3d Cir. 1994). There was a "loss" within the meaning of the law.

Next, Mr. Mansaray argues that Mr. Pinsky, his attorney, was ineffective for failing to review the calculation of the Base Offense Level for the agreed upon level of 26 or review the portions of the guidelines leading to the calculation. Mansaray asserts that he lacked a full understanding of the agreement and offense level calculation; therefore, his waiver of the appeal was not knowing or voluntary. Furthermore, he argues that his attorney accepted the Guideline offense level without question, which he in turn encouraged his client to accept.

In order to prevail on an ineffective assistance claim, the claimant must satisfy a two-part test set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984). First, he must show that counsel was deficient and second that he was prejudiced by counsel's deficiency. Id. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Mr. Mansaray testified before the Court that counsel explained the guidelines to him and he understood them:

> The Court: Now, with respect to your plea. You are represented by your attorney. Did you have sufficient opportunity to review the charges that are being made against you with respect to determining how you wish to plead to them?
>
> Mansaray: Yes, your Honor.
>
> The Court: And did your attorney answer to your satisfaction any question you may have had with respect to this information?
>
> Mansaray: Yes, Your Honor.

> The Court: Did he explain to you your rights and responsibilities with respect to this hearing here today and what rights were involved?
>
> Mansaray: Yes, your Honor.
>
> The Court: And are you satisfied with the services performed on your behalf by your attorney?
>
> Mansaray: Yes, Your Honor.

(8/14/07 Tr. at 5:22-6:12.) Later in that hearing the Court explained to Mansaray the process by which the Sentencing Guidelines would inform the Court's sentencing process but that these guidelines were not mandatory on the Court. The Court specifically stated that, "it's impossible now for anyone to tell you exactly what the range will be." (Id. at 14:10-11.) Mansaray indicated that he understood the process by which the Court utilizes the Guidelines and that they were advisory.

As the Court explained above, the guideline range utilized by the Court were proper. Mansaray has failed to show that his attorney was deficient or that any deficiency prejudiced the outcome of the proceedings.

## III. CONCLUSION

Mansaray entered into the plea agreement, which contained a waiver of the right to collaterally attack his sentence, knowingly and voluntarily. Petitioner has failed to offer any valid ground for finding that enforcement of his knowing and voluntary waiver of his rights under § 2255 would lead to a miscarriage of justice. There is no evidence to suggest a miscarriage of justice in this case. Accordingly,

IT IS on this 16th day of June 2010 hereby ORDERED that Respondent's motion to dismiss [5] is granted.

/s/Joseph H. Rodriguez
HON. JOSEPH H. RODRIGUEZ,
United States District Judge